IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Bankruptcy No. 16-12073 |
| MICHAEL A. CALOGRIDIS, | ) |  |
|  | ) | 2nd DECLARATION OF RORY C. LIVESEY |
| Debtor(s). | ) | IN SUPPORT OF MOTION FOR SALE |
|  | ) | OF REAL PROPERTY OF THE ESTATE |

The undersigned makes the following statement under penalty of perjury:

1.     I am over 18 years of age, am competent to testify to the statements herein and make the statements herein based on facts personally known to me.

2.     I am the attorney for the Chapter 7 trustee in the above-captioned bankruptcy.

3.     The motion for the sale of the property of the estate was originally set for September 2, 2016. The deadline for timely objections was August 16, 2016. There were no objections. The hearing was continued to September 16, 2016 awaiting lender approval of the short sale. Lender approval was received shortly after the hearing was continued a second time.

4.     Attached hereto is a copy of the purchase and sale agreement entered into between the trustee and Colin Tierney and Gloria Johnson for the real property located at 5615 - 24th Avenue N.W., Unit 24, Seattle, Washington 98107.  As mentioned in the Declaration of Kai Rainey, this offer was received after the motion to approve the sale to Ty Connor Overby was filed. The original sale price was $408,000. The new offer is $415,000.

5.     The secured creditor, Bayview Loan Servicing LLC has given written approval of the current sale.

**DECLARATION OF RORY C.  LIVESEY IN
SUPPORT OF MOTION FOR SALE OF REAL
PROPERTY OF THE ESTATE**
160914cDec  Page 1

THE LIVESEY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101
(206) 441-0826

1     6.     The estate will receive $22,825 from the sale.   One half of those funds will be paid

2     to general unsecured creditors.     The claims bar date has not yet passed.  Based on the debtor's

3     schedules it is estimated the general unsecured creditors will receive approximately twelve percent.

4     7.     The trustee recognizes that the sale for which he seeks court approval has a different

5     buyer and a different price than shown on the notice sent to creditors. However, the new price is

6     higher than the original offer, will generate a few more dollars and has been approved by the secured

7     creditor. Perhaps more importantly, Metropole Owners Association ("HOA") has a foreclosure sale

8     currently scheduled for September 23rd. The trustee will, of course, ask for a continuance. If the

9     HOA will not agree to a continuance, this is the only opportunity for the trustee to sell this property

10    for the benefit of the creditors.

11    8.     Under the circumstances the trustee may have to close the sale as expeditiously as

12    possible. The trustee is requesting that the order approving the sale waive the automatic stay

13    required by Federal Rule of Bankruptcy Procedure 6004(h).

14

15    DATED this 15th day of September, 2016.

16

17                           */S/ Rory C. Livesey*
                                _____

18                                Rory C. Livesey

19

20

21

22

23

24

25

**DECLARATION OF RORY C.  LIVESEY IN
SUPPORT OF MOTION FOR SALE OF REAL
PROPERTY OF THE ESTATE**
160914cDec   Page 2

THE LIVESEY LAW FIRM
600 Stewart Street, Suite 1908
Seattle, WA 98101
(206) 441-0826

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT

## U.S. BANKRUPTCY COURT, WESTERN DIST. OF WASHINGTON AT SEATTLE

THIS AGREEMENT is entered into by and between the below named Buyer and the below named Seller, in his or her capacity as a United States Bankruptcy Trustee for the below named bankruptcy estate. The Buyer agrees to purchase and the Seller agrees to sell the described property pursuant to the following terms and conditions:

BUYER(S): Colin Tierney & Gloria Johnson, a married couple

ADDRESS: 442 Oyster Drive

CITY, STATE & ZIP CODE: La Selva Beach, CA 95076

PHONE: ~~███████~~

EMAIL: ~~███████~~

SELLER: Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073

PROPERTY STREET ADDRESS: 5615 24th Ave NW #24,

CITY, STATE & ZIP CODE: Seattle, WA 98107

LEGAL DESCRIPTION: Attached on Exhibit "A" hereto

PURCHASE PRICE: (Base offer Price) $~~80~~ $415,000

DATE OF CLOSING:        Within 45 days of Bankruptcy Court or lender approval, whichever is later

SELLING FIRM: Alise Roberts & Company            MLS OFFICE NO 3847

SELLING FIRM ADDRESS: 10900 NE 8th St. #1000

CITY, STATE & ZIP CODE: Bellevue, WA 98004

SELLING BROKER: Bethanie Ferrando            MLS LAG 66212

PHONE AND FAX: 425-737-1771

EMAIL: bethanie@aliseroberts.com

LISTING FIRM:    RE/MAX Eastside Brokers Kai Rainey 34930        Title is Open with First American
                11555 SE 8th St. Bellevue, WA 98004              Title # 4220-2654820
                206-681-9670 (main line) 206-299-3131 (fax)
                offers@ssapprovals.com
                                                    WIRE TRANSFER ✔ PROMISSORY NOTE ____

EARNEST MONEY AMOUNT: $10,000    FORM: CASH____ PERSONAL CHECK ____ CASHIERS CHECK ____

Buyer Initial: *CT*        Buyer Initial: *CS*                    Seller Initial: *ejw*
Date: 8/8/2016            Date: 8/8/2016                          Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

1. **No Representations or Warranties.** The Seller is a bankruptcy trustee and therefore he/she has no personal knowledge regarding the property. There are no representations or warranties regarding the property or its condition. All sales are "as is, where is" and without any representations or warranties of any kind express or implied.

2. **Earnest Money Forfeiture.** In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by the Buyer shall be forfeited to the Seller as the sole and exclusive remedy available to the Seller for such failure. If the earnest money deposit is greater than five percent of the purchase price, only that portion of the earnest money deposit equal to five percent of the purchase price shall be forfeited to the Seller. By their initials below, Buyer and Seller specifically acknowledge that they have read the preceding provision regarding forfeiture of the earnest money and understand and agree to it.

   Buyer Initial: _CI_   Buyer Initial: _CS_   Seller Initial: _ejw_
   Date: 8/8/2016   Date: 8/8/2016   Date: 8/15/2016

3. **Financing.** This offer [ ] is [✓] is not conditioned upon Buyer obtaining a [ ] Conventional [ ] FHA [ ] VA [ ] USDA [ ] FHA 203k [ ] Other: _____

   Buyer Does_____/Does Not __✔__ request that seller pay up to $ZERO$ in closing and other allowable costs (must be agreed to by lienholder).

4. **Down Payment/Loan Application.** Buyer agrees to pay 100% down, and to make an application, in good faith, within seven days after approval of this Agreement, for a market rate loan to pay the balance of the purchase price. If application is not made within 7 (seven) days of approval, Seller may retain the earnest money and Agreement may terminate.

5. **Proof of Funds.** In the event buyer fails to provide proof of all necessary funds to close; including down payment, closing costs and bankruptcy fee within 48 hours of Sellers acceptance of offer, then this agreement may be terminated by notice from the seller to the buyer and earnest money shall be returned to the buyer.

6. **Financing Deadline/Seller Termination Notice.** If Buyer has not within 30 days after initial signing of this Agreement, given notice that Buyer has obtained financing or waived the financing condition, then this Agreement may terminate upon the expiration of the 30th day after initial signing. If termination occurs, Seller shall remit the earnest money to the Buyer.

Buyer Initial: _CI_   Buyer Initial: _CS_   Seller Initial: _ejw_
Date: 8/8/2016   Date: 8/8/2016   Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

7. **Loan Costs.** Seller will not be responsible for any loan costs, unless agreed to upon mutual acceptance, except (I) such portion of Buyer's costs that Buyer is prohibited from paying pursuant to applicable FHA regulations; and (2) if this sale is financed by a VA loan, the Seller agrees to pay those closing costs Buyer is prohibited from paying pursuant to applicable VA regulations.

8. **Inspections.** The Buyer has fifteen (15) days from the date of mutual with the trustee to inspect the premises. Inspection contingency shall be deemed waived, unless the Buyer provides Seller with written notice within said fifteen (15) days that the inspection contingency has <u>not</u> been waived and earnest money shall be returned to the buyer.

Buyer Initial: **CT**    Buyer Initial: **CS**
Date: 8/8/2016    Date: 8/8/2016

Notwithstanding the foregoing, if the financing institution requires an additional inspection, Seller agrees to permit such inspection. The Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefor. Buyer will return the property to its original condition after said inspection or test. The Buyer will hold the Seller, its officers, agents and attorneys harmless from all claims arising out of Buyers inspection or testing of the property.

9. **Defects.** Buyer represents to the Seller that Buyer will fully inspect the property and Buyer assumes the responsibility and risks of all defects and conditions, including such defects and conditions, if any, that cannot be observed by casual inspection. Seller makes no representation or warranties expressed or implied of any kind with respect to, among other things; (a) the dimension, size or acreage of the premises; (b) any applicable governmental laws or regulations; (c) availability of water, sewer or other utilities: (d) the environmental condition of the property; or (e) the existence or non-existence of urea-formaldehyde or asbestos.

10. **Personal Property.** The Seller is a bankruptcy trustee and has no knowledge of whether or not there is any leased personal property on the premises. It shall be up to the Buyer to make an appropriate investigation to determine whether or not there is any leased property on the premises which in any case is not included in the sale. The debtor(s) may claim personal property on the premises, such as non-built-in appliances, drapes, curtains, etc., as exempt property. In such instance that personal property is not included in the sale.

11. **Feasibility Study.** If the Purchase and Sale Agreement is subject to a feasibility study and the sale does not close because of any contingency which the Buyer does not waive, then prior to returning any earnest money or promissory note the Buyer shall provide the Seller with a copy of every study, report, analysis or appraisal regarding the property.

Buyer Initial: **CT**    Buyer Initial: **CS**        Seller Initial: **ejw**
Date: 8/8/2016    Date: 8/8/2016        Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

12. **SHORT SALE DISCLOSURE** This sale is ☑ / is not ☐ a short sale. If this is a short sale the following shall apply:

    **a.** This agreement is contingent upon the seller obtaining written consent from the lienholder(s) within 90 days (60 days if not filled in, must match days entered on NWMLS form 22SS) of mutual acceptance. Seller shall notify buyer of lienholder approval by providing buyer a copy of the lienholder approval letter. If seller fails to reach agreement with lienholder, this agreement shall terminate and earnest money will be refunded to the buyer.

    **b.** Buyer acknowledges that lienholder may have additional addendums and clauses that will be integrated into this agreement. Buyer agrees to return all lienholder required documents within 2 calendar days of receipt. If buyer fails to return required documents, this transaction may be cancelled by the seller and earnest money shall be returned to the buyer.

Buyer Initial: _CJ_ Date: 8/8/2016
Buyer Initial: _CS_ Date: 8/8/2016

    **c.** Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA liens, utility liens and appraisal required repairs **may not be agreed to by lienholder.** Buyer agrees to pay for all costs not agreed to by lienholder in order to close. These items are subject to buyer review, buyer may terminate this agreement if items are deemed too costly and earnest money shall be refunded to the buyer.

Buyer Initial: _CJ_ Date: 8/8/2016
Buyer Initial: _CS_ Date: 8/8/2016

13. **Hazardous Waste.** The Seller, as a bankruptcy trustee, has no actual personal knowledge of the presence of any hazardous waste on the property, including, but not limited to, petroleum products and asbestos, and has no actual personal knowledge of the violation of any environmental law, regulation or ordinance with respect to the property. Buyer understands and agrees that any knowledge about the condition of the property of other parties including the trustee's real estate agent, debtor, the debtor's employees and agents, or any other persons or entities shall not be imputed to the trustee or the estate. Buyer hereby assumes all risk and costs related to the presence of hazardous waste and the environmental condition of the property. Buyer hereby waives any and all rights of contribution, indemnity and/or reimbursement with respect to any and all defects, including but not limited to, hazardous waste and environmental condition.

14. **Possession.** Buyer shall be entitled to possession upon closing.

15. **Closing.** "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. Seller does not agree to clean the interiors or exteriors of any structures. The sale is "as is, where is".

Buyer Initial: _CJ_ Date: 8/8/2016
Buyer Initial: _CS_ Date: 8/8/2016
Seller Initial: _egw_ Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

16. **Escrow Agent.** The transaction shall be escrowed by the following:

☑ First American Escrow-Tammi Habic, 2707 Colby Avenue Suite 601, Everett, WA 98201
Phone: (425) 551-2022 Fax: (866) 859-0436 Email: thabic@firstam.com

☐ Law Office of Wanda Reif Nuxoll, P.S. PO Box 2406 Issaquah, WA 98027
Phone: (206) 749-2850 Fax: (206) 749-2851 Email: wnuxoll@wrnlaw.com

17. **Condition of Title.** Unless otherwise specified in this Agreement, title to the property shall be marketable at closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions presently of record and general to the area, including but not limited to zoning; easements and encroachments not materially affecting the value of or unduly interfering with Buyer's intended use of the property; and reserved oil and/or mineral rights. Monetary encumbrances not assumed by the Buyer shall be removed from the title by the Seller on or before closing. If for any reason the Seller is unable to transfer marketable title to the Buyer then this Agreement is null and void, the Buyer's earnest money, if any, shall be returned and the Seller shall be released of all obligations hereunder.

18. **Title Insurance.** Seller shall provide a standard form of title insurance from a title insurance company of Sellers choice. Seller authorizes lender or closing agent, at Seller's expense, to apply for a standard form buyer's policy of title insurance with homeowner's additional protection and inflation protection endorsement if available at no additional cost. If buyer elects to purchase a homeowner or extended title policy, the difference in premium shall be a buyer expense. The preliminary commitment therefor, and the policy to be issued, shall contain no exceptions other than general exclusions and exceptions in said standard form. If title cannot be made so insurable prior to closing, the earnest money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in paragraph 22 hereof, and this Agreement shall thereupon be terminated.

19. **Title Transfer.** Title shall be transferred by the bankruptcy trustee's quit claim deed.

20. **Buyer's Funds to Close.** Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

21. **Closing Costs and Pro-Rations.** Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank.

Buyer Initial: _CI_  
Date: 8/8/2016

Buyer Initial: _GJ_  
Date: 8/8/2016

Seller Initial: _egw_  
Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

22. **Sale Information.** After approval by the United States Bankruptcy Court, selling agent is authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the listing and/or selling agents, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including buyer's credit report.

23. **Notices.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including any addenda hereto) must be in writing, signed by any one Buyer or Seller (including either husband or wife) and received by selling agent who, for this limited purpose, shall be the agent of both parties. Any time limit in or applicable to a notice shall commence on the date following receipt of the notice by the selling agent, unless that is a Saturday, Sunday or holiday, in which event it will commence on the next following business day. Buyer must keep selling agent advised of their whereabouts to receive prompt notification of receipt of a notice. Selling agent has no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address on this Agreement.

24. **Earnest Money Receipt and Disbursement.** Selling agent acknowledges receipt from Buyer of the earnest money as set forth above in the form indicated to be held in Closing Agent's pooled trust account (with interest paid to the Washington Housing Fund or such other relevant fund in accordance with applicable laws). Agent shall not deposit any check until Buyer and Seller both have completed initial signing of this Agreement. Any unpaid loan or sale costs incurred for the Buyer, including credit report, appraisal fee, and escrow cancellation fee, may be paid from the earnest money prior to its disbursement.

25. **Seller Conditions.** This Agreement is subject to approval by the Bankruptcy Court. The trustee does not always have access to a title report or information with respect to the tax consequences of a sale when a purchase offer is made. Accordingly, the purchase agreement is conditioned on: (1) the trustee obtaining an opinion from an accountant that the proposed sale will not result in adverse tax consequences and (2) if the trustee in his or her sole discretion deems it appropriate, the court authorizing an award to the estate of reasonable fees and expenses pursuant to 11 U.S.C. Section 506(c) if there are liens against the property.

Buyer Initial: _CI_
Date: 8/8/2016

Buyer Initial: _CJ_
Date: 8/8/2016

Seller Initial: _ejw_
Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

26. **Subsequent Offers.** All purchase agreements are subject to approval and order of the U. S. Bankruptcy Court, and there cannot be mutual acceptance until final approval by the Bankruptcy Court. The Seller will apply to the Bankruptcy Court for approval of the sale as set forth herein as soon as reasonably practicable. Mutual acceptance occurs upon final approval by the Bankruptcy Court. Further, if the trustee receives a better offer on the property prior to or at the Bankruptcy Court hearing, the trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from this Agreement will not change the law. The trustee agrees, however, to follow the procedure set forth in the next paragraph allowing for Buyer to attempt to match an opportunity competing offer.

27. **Competing Bids.** If this agreement is the first agreement the Seller has signed regarding the subject property, the Seller, subject to court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. In order to bring this paragraph into effect, Buyer must notify the Seller of its intent to match the third party's offer within 48 hours of receipt from the Seller of written notice of the third party's offer. The Seller's notice shall be in writing and state that the Buyer needs to meet or exceed the third party's price and other terms. Price increases must be in increments of not less than one percent of the offer price or $5,000 dollars, whichever is greater. If an offer is received within 24 hours of the court hearing date, the court may have the proposed purchasers submit in writing their last, highest, and best offers at or following the hearing to approve the sale.

28. **Agreement to Purchase and Time Limit for Acceptance.** Buyer offers to purchase the property on the above terms and conditions. The initial signing is not effective until a signed copy hereof is actually received by the office of the selling agent. If this offer is not so signed, it shall lapse and selling agent shall refund the earnest money to Buyer.

29. **Counteroffers.** If a party makes a counteroffer the other party shall have until 9:00 p.m. on the second day following receipt of the counteroffer to sign it. Signing is only effective by delivering the signed counteroffer to the office of the selling broker.

30. **Commission.** A real estate commission will be paid at closing in accordance with the listing agreement and pursuant to an order of the Bankruptcy Court.

31. **Resale Certificate.** If the subject real property is a condominium, Buyer shall purchase a Resale Certificate within ten (10) days after written lien holder approval. Buyer shall be conclusively deemed to have approved said Resale Certificate unless within fifteen (15) days following lienholder approval, Buyer gives notice of disapproval of the Resale Certificate. If Buyer disapproves said Resale Certificate this Agreement shall terminate and the earnest money shall be refunded to Buyer.

Buyer Initial: _CI_
Date: 8/8/2016

Buyer Initial: _CS_
Date: 8/8/2016

Seller Initial: _egw_
Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

32. **Disclosure Statement.** The Seller is a bankruptcy trustee and therefore exempt from providing a real property transfer disclosure statement and therefore no such statement will be provided.

33. **Earnest Money Deposit.** Selling Broker will deposit any check to be held by Selling Broker as earnest money within three (3) days after receipt or initial signing, whichever occurs later. If the earnest money is held by Selling Broker and is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If the Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the earnest money or if the earnest money is $10,000.00 or less, the earnest money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the earnest money to Closing Agent. Buyer agrees to pay financing and purchase costs incurred by buyer. If all or part of the earnest money is to be refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay them therefrom.

34. **Lead Paint.** Many used homes, especially those constructed before 1978, contain lead paint. Lead paint is poisonous, especially for children. The Seller has no knowledge with respect to the presence or absence of lead paint in the subject property. The Buyer shall undertake such investigation as he or she deems prudent in the circumstances. The Buyer shall conduct an initial inspection for the presence of lead paint within the fifteen day time frame set forth in paragraph 8 herein. However, provided that the Buyer obtains specimens for analysis within the original inspection period and delivers them to a laboratory, upon written notice to the Seller within the original fifteen (15) day period, the Buyer may have an additional ten (10) days to obtain the results of a laboratory analysis for the presence of lead. If the Buyer does not obtain such laboratory samples, deliver them to a laboratory and provide the Seller with notice within fifteen (15) days of initial signing, this contingency will be deemed to be waived on the close of business fifteen days from initial signing. Unless the Buyer notifies the Seller within such additional ten (10) day period that the property is not acceptable due to the presence of an unsafe levels of lead paint, then this contingency will be deemed waived.

35. **Agency Disclosure and Receipt of Agency Pamphlet.** Seller acknowledges receipt of the pamphlet entitled The Law of Real Estate Agency. The Northwest Multiple Listing Association requires all Real Estate licensees (agents) to disclose to the Buyer and Seller in a real estate transaction whether the licensee represents the Seller, the Buyer, both the Seller and the Buyer, or neither. The listing licensee represents the Seller. The selling licensee represents:



DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

36. **Addenda.** The following addenda are attached hereto and made a part of this Agreement:

[   ] NONE        [   ] <u>34</u> _____

37. **Facsimile and E-mail Transmission.** Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail transmission of any signed original document, and retransmission of any such e-mail, shall be the same as delivery of an original, provided that the e-mail is sent to both Selling Broker and Selling Firm  or both  Listing Broker and Listing Firm at the e-mail addresses Listed below. At the request of either party, or the Closing Agent, the parties will confirm e-mail transmitted signatures by signing an original document.

Selling Broker Email Address

bethanie@aliseroberts.com

Selling Firm Document Email Address

contracts@aliseroberts.com

Listing Broker Email Address

offers@ssapprovals.com

Listing Firm Document Email Address

eastsidebrokers@metroeastside.com

38. **Integration and Electronic Signatures.** This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

SELLER SIGNATURE: *Edmund J. Wood*          DATE: 8/15/2016
— E7A99B16DF234DF...

SELLER: Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073

BUYER SIGNATURE: *Colin Tierney*          DATE: 8/8/2016
— DD4DB95824B7458 ..

BUYER PRINT: Colin Tierney

BUYER SIGNATURE: *Gloria Johnson*          DATE: 8/8/2016
— 24E4CE4282FA44D...

BUYER PRINT: Gloria Johnson

Buyer Initial: CT
Date: 8/8/2016

Buyer Initial: CJ
Date: 8/8/2016

Seller Initial: EJW
Date: 8/15/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated __08/08/16__     1

between __Colin Tierney & Gloria Johnson, a married couple__ ("Buyer") 2

and __Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073__ ("Seller") 3

concerning __5615 24th Ave NW #24,__     __Seattle, WA 98107__ (the "Property"). 4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:     5

6

**1. No Representations or Warranties.** The Seller is a bankruptcy trustee and therefore he/she has 7
no personal knowledge regarding the property. There are no representations or warranties 8
regarding the property or its condition. All sales are "as is, where is" and without any 9
representations or warranties of any kind express or implied. 10

11

**2. Buyer acknowledges** that cost for items such as septic inspection and pumping, well certification, HOA 12
liens, utility liens and appraisal required repairs may not be agreed to by lienholder. Buyer agrees to pay for 13
all costs not agreed to by lienholder in order to close. These items are subject to buyer review, buyer may 14
terminate this agreement if items are deemed too costly and earnest money shall be refunded to the buyer. 15

16

**3. Buyer agrees to pay** up to 5.5% of purchase price or as outlined below (check one below) whichever is 17
greater, at closing as a buyers premium to the estate. This fee must be paid in full at closing and cannot be 18
included in the loan amount. Fee will appear on HUD as Buyer Bankruptcy Fee. Buyer represents that these 19
funds are available and agrees to provide proof of funds with offer when submitted. 20

21

**Base offer Price $0-215,000** ☐ **$15,000 BK Fee** 22

23

**Base offer Price $215,001-$364,000** ☐ **$20,000 BK Fee** 24

25

**Base offer Price $364,001 and up** ☑ **5.5% BK Fee** 26

27

28

29

30

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

Initials: BUYER: _CT_   Date: _8/8/2016_   SELLER: _ejw_   Date: _8/15/2016_

BUYER: _GJ_   Date: _8/8/2016_   SELLER: _____   Date: _____

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

**SHORT SALE ADDENDUM TO
PURCHASE & SALE AGREEMENT**

©Copyright 2014
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated __08/08/16__ 1

between __Colin Tierney & Gloria Johnson, a married couple__ ("Buyer") 2

and __Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073__ ("Seller") 3

concerning __5615 24th Ave NW #24,__ __Seattle, WA 98107__ (the "Property"). 4

1. **SHORT SALE.** A "Short Sale" is a transaction that depends on Seller's creditor(s)' agreement to accept less than 5
the amount secured by the Property in order to satisfy Seller's obligations at Closing. Buyer and Seller 6
acknowledge that the purchase price is insufficient to cover Seller's obligations at Closing and that this Agreement 7
constitutes a Short Sale. 8

2. **SHORT SALE CONTINGENCY.** This Agreement is contingent upon Seller obtaining written consent from Seller's 9
creditor(s) for the Short Sale and Seller's acceptance of any conditions imposed by Seller's creditor(s) ("Lender 10
Consent"). Seller shall have __0__ days (60 days, if not filled in) after mutual acceptance to obtain Lender 11
Consent. If Seller timely gives notice of Lender Consent to Buyer ("Notice of Lender Consent"), then this 12
contingency shall be deemed satisfied. If Seller fails to timely give Notice of Lender Consent to Buyer, then this 13
Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. If Seller becomes 14
aware that Seller's creditor(s) did not consent to the Agreement or if Seller decides not to accept the conditions 15
imposed by Seller's creditor(s), Seller shall give notice to Buyer of that fact within 2 days and upon Seller's notice, 16
this Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. Buyer and Seller 17
acknowledge that Seller has limited control over whether Seller's creditor(s) will consent to the sale and when 18
such consent is given. 19

3. **OFFERS FROM OTHER BUYERS.** Seller may accept offers from other buyers to purchase the Property to 20
submit to Seller's creditor(s). The parties are advised that some creditors may require that Seller submit multiple 21
offers in order to satisfy Seller's obligations to its creditors. Buyer acknowledges that this Agreement does not 22
have any priority over agreements with or offers from other buyers. Seller has limited control over which 23
agreement Seller's creditor(s) may approve, and Seller may continue to market the Property. At the time of the 24
offer, Buyer is advised to inquire about other offers that Seller may have already accepted. 25

If, after mutual acceptance, Seller submits an offer from another buyer to Seller's creditor(s), Seller must give 26
notice to Buyer of that fact within 2 days of each such offer ("Notice of Additional Offer"). Buyer may terminate this 27
Agreement within 3 days of receiving any Notice of Additional Offer, in which case, the Earnest Money, if 28
deposited, shall be refunded to Buyer. 29

4. **TERMINATION BY BUYER.** Buyer ☒ may; ☐ may not (may, if not filled in) terminate this Agreement at any time 30
prior to Notice of Lender Consent. Buyer maintains the right to terminate the Agreement under any other condition 31
or contingency in the Agreement prior to Notice of Lender Consent. If Buyer terminates this Agreement under this 32
Section, the Earnest Money, if deposited, shall be refunded to Buyer. 33

5. **COMPUTATION OF TIME.** For the purposes of computing time only (except for paragraph 2 above and the 34
specific items checked below), all timelines in this Agreement shall begin on the date of Notice of Lender 35
Consent. The timelines for the following items, if checked, shall instead begin on mutual acceptance: 36

☒ Deposit of Earnest Money ☐ Inspection Addendum (Form 35) 37
☐ Financing Addendum (Form 22A) ☐ Title Contingency Addendum (Form 22T) 38
☐ Buyer's Sale of Property Contingency Add. (Form 22B) ☐ Septic Addendum (Form 22S) 39
☐ Homeowner's Assoc. Review Period (Form 22D) ☐ Neighborhood Review (Form 35 or 35N) 40
☐ Other _____ ☐ Other _____ 41

6. **CLOSING.** The Closing Date shall be _____ days (30 days, if not filled in) after Notice of Lender Consent, 42
which date shall supersede the Closing Date otherwise provided for in this Agreement. 43

7. **IMPLICATIONS OF A SHORT SALE.** The parties acknowledge that this Addendum does not fully explain all of 44
the implications of a Short Sale. The parties are advised to seek the advice of third party professionals regarding 45
this Agreement and the consequences of this Addendum. Seller acknowledges receipt of the Short Sale Seller 46
Advisory pamphlet prepared by Washington Departments of Licensing and Financial Institutions. 47

8. **NOTICES.** NMLS Form 90SS (Notice Pursuant to Short Sale Addendum) shall be used for any notice required 48
by this Addendum. 49

| CT 8/8/2016 | CJ 8/8/2016 | EJW 8/15/2016 | |
|---|---|---|---|
| Buyer's Initials Date | Buyer's Initials Date | Seller's Initials Date | Seller's Initials Date |

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

©Copyright 2014
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**IDENTIFICATION OF UTILITIES
ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated **08/08/16**   1

between **Colin Tierney & Gloria Johnson, a married couple**   ("Buyer").   2

and **Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073** ("Seller")   3

concerning **5615 24th Ave NW #24,**    Seattle, WA 98107   (the "Property").   4

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds  5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities  6
providing service to the Property and having lien rights are as follows:  7

**WATER DISTRICT:**     HOA - The Metropole   8
Name   9
Address   10
City, State, Zip    Fax. No. 

**SEWER DISTRICT:**   HOA - The Metropole   11
Name   12
Address   13
City, State, Zip    Fax. No. 

**IRRIGATION DISTRICT:**   14
Name   15
Address   16
City, State, Zip   HOA - The Metropole    Fax. No. 

**GARBAGE:**   17
Name   18
Address   19
City, State, Zip    Fax. No. 

**ELECTRICITY:**   20
Name   21
Address   22
City, State, Zip    Fax. No. 

**GAS:**   23
Name   24
Address   25
City, State, Zip    Fax. No. 

**SPECIAL DISTRICT(S):**   26
(local improvement districts or   Name   27
utility local improvement districts)   Address   28
City, State, Zip    Fax. No. 

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)  29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing  30
Broker or Selling Broker with the names and addresses of all utility providers having lien rights affecting the Property  31
and (2) Buyer and Seller authorize Listing Broker or Selling Broker to insert into this Addendum the names and  32
addresses of the utility providers identified by Seller.  33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges  34
(including unbilled charges). Buyer understands that the Listing Broker and Selling Broker are not responsible for, or  35
to insure payment of, Seller's utility charges.  36

CT   8/8/2016    GJ   8/8/2016    ejw   8/15/2016

Buyer's Initials   Date    Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date

### FIRST AMERICAN TITLE INSURANCE COMPANY
### Exhibit "A"

Vested Owner: EDMUND J. WOOD, TRUSTEE, SUBJECT TO PROCEEDINGS PENDING IN THE BANKRUPTCY COURT OF WESTERN DISTRICT OF THE U.S. DISTRICT COURT, WASHINGTON, ENTITLED: IN RE: MICHAEL A. CALOGRIDIS

Real property in the County of King, State of Washington, described as follows:

UNIT 24 OF THE METROPOLE, A CONDOMINIUM, ACCORDING TO DECLARATION THEREOF RECORDED UNDER KING COUNTY RECORDING NO. 20060621001143 AND ANY AMENDMENTS THERETO; SAID UNIT IS LOCATED ON SURVEY MAP AND PLANS FILED IN VOLUME 218 OF CONDOMINIUMS, PAGES 87 THROUGH 98, IN KING COUNTY, WASHINGTON.

Tax Parcel Number: 549130005008

Situs Address: 5615 24th Ave NW Unit 24, Seattle, WA 98107

Seller Initial _EJW_ Date _5/26/2016_

Buyer Initial _____ Date _8/8/2016_

Buyer Initial _CT_ Date _____

_CJ_ 8/8/2016

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-673C-4266-B771-81878A7B634A

Form 22J
Disclosure Lead Based Paint & Hazards
Rev. 7/10
Page 1 of 2
©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT
AND LEAD-BASED PAINT HAZARDS**
Addendum to Purchase & Sale or Lease Agreement

The following is part of the Purchase and Sale/Lease Agreement dated __5-4-2016__ , 1

between __COLIN TIERNEY & GLORIA JOHNSON__ ("Buyer" and/or "Lessee") 2

and __Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073__ ("Seller" and/or "Lessor") 3

concerning __5615 24th Ave NW #24,          Seattle, WA 98107__ (the "Property"). 4

**Purchase & Sale Agreement Lead Warning Statement** 5

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978* 6
*is notified that such property may present exposure to lead from lead-based paint that may place young children* 7
*at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological* 8
*damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired* 9
*memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential* 10
*real property is required to provide the buyer with any information on lead-based paint hazards from risk* 11
*assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint* 12
*hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to* 13
*purchase.* 14

**Lease Agreement Lead Warning Statement** 15

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health* 16
*hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant* 17
*women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and* 18
*lead-based paint hazards in the dwelling. Tenants must also receive a Federally approved pamphlet on lead* 19
*poisoning prevention.* 20

**Cancellation Rights** 21

*If a residential dwelling was built on the Property prior to 1978, Buyer may rescind the Agreement at any time* 22
*up to 3 days after Buyer receives this Disclosure, unless Buyer receives this disclosure prior to entering* 23
*the Agreement.* 24

**NOTE:** In the event of pre-closing possession of more than 100 days by Buyer, the term Buyer also means Tenant. 25

**Seller's/Lessor's Disclosure** 26

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below): 27

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). 28

☑ Seller/Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. 29

(b) Records and reports available to the Seller/Lessor (check one below): 30

☐ Seller/Lessor has provided the Buyer/Lessee with all available records and reports pertaining to lead-
based paint and/or lead-based paint hazards in the housing (list documents below). 31
32

_____ 33

_____ 34

☑ Seller/Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards 35
in the housing. 36

Seller has reviewed the information above and certifies, to the best of Seller's knowledge, that the statements made 37
and information provided by Seller are true and accurate. 38

*Edmund J. Wood*                    5/26/2016                  _____  _____ 39
Seller/Lessor                        Date        Seller/Lessor                       Date

Initials: BUYER/LESSEE: [CT]   Date: 8/8/2016      SELLER/LESSOR: [ejw]   Date: 5/26/2016

BUYER/LESSEE: [GJ]   Date: 8/8/2016      SELLER/LESSOR: _____   Date: _____

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-873C-4286-B771-61878A7B634A

Form 22J
Disclosure Lead Based Paint & Hazards
Rev. 7/10
Page 2 of 2

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT
AND LEAD-BASED PAINT HAZARDS**
Addendum to Purchase & Sale or Lease Agreement
*Continued*

**Buyer's/Lessee's Acknowledgment**                                                                40

(c) Buyer/Lessee has received copies of all information listed above.                             41

(d) Buyer/Lessee has received the pamphlet "Protect Your Family from Lead in Your Home."          42
                                                                                                  43

(e) Buyer has (check one below only if Purchase and Sale Agreement):

☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint   44
and/or lead-based paint hazards.                                                                           45

☐ Accepted an opportunity to conduct a risk assessment or inspection for the presence of lead-based        46
paint and/or lead-based paint hazards on the following terms and conditions:                               47

This Agreement is conditioned upon a risk assessment or inspection of the Property for the presence of     48
lead-based paint and/or lead-based paint hazards, to be performed by a risk assessor or inspector at       49
the Buyer's expense. (Intact lead-based paint that is in good condition is not necessarily a hazard. See   50
the EPA pamphlet "Protect Your Family From Lead in Your Home" for more information).                       51

This contingency SHALL CONCLUSIVELY BE DEEMED SATISFIED (WAIVED) unless Buyer gives                        52
written notice of disapproval of the risk assessment or inspection to the Seller within _____            53
(10 days if not filled in) after receiving this Disclosure. Buyer's notice must identify the specific existing   54
deficiencies and corrections needed and must include a copy of the inspection and/or risk assessment        55
report.                                                                                                     56

The Seller may, at the Seller's option, within _____ days (3 days if not filled in) after Seller's       57
receipt of Buyer's disapproval notice, give written notice that Seller will correct the conditions identified   58
by Buyer. If Seller agrees to correct the conditions identified by Buyer, then it shall be accomplished at  59
Seller's expense prior to the closing date, and Seller shall provide Buyer with certification from a risk   60
assessor or inspector demonstrating that the condition(s) has been remedied prior to the closing date.     61
In lieu of correction, the parties may agree on any other remedy for the disapproved condition(s),         62
including but not limited to cash payments from Seller to Buyer or adjustments in the purchase price. If    63
such an agreement on non-repair remedies is secured in writing before the expiration of the time period    64
set forth in this subparagraph, then this contingency will be deemed satisfied.                            65

If the Seller does not give notice that the Seller will correct the conditions identified in Buyer's risk   66
assessment or inspection, or if the parties cannot reach an agreement on alternative remedies, then        67
Buyer may elect to give notice of termination of this Agreement within _____ days (3 days if not         68
filled in) after expiration of the time limit in the preceding subparagraph or delivery of the Seller's notice   69
pursuant to the preceding subparagraph, whichever first occurs. The earnest money shall then be            70
returned to the Buyer and the parties shall have no further obligations to each other. Buyer's failure to   71
give a written notice of termination means that the Buyer will be required to purchase the Property         72
without the Seller having corrected the conditions identified in Buyer's risk assessment or inspection      73
and without any alternative remedy for those conditions.                                                   74

Buyer waives the right to receive an amended Real Property Transfer Disclosure Statement (NWMLS            75
Form No. 17 or equivalent) pursuant to RCW 64.06 based on any conditions identified in inspection          76
and/or risk assessment report(s).                                                                          77

Buyer has reviewed the information above and certifies, to the best of Buyer's knowledge, that the statements made   78
by Buyer are true and accurate.                                                                            79

| *Colin Tierney* | 8/8/2016 | *Gloria Johnson* | 8/8/2016 |
|---|---|---|---|
| Buyer/Lessee | Date | Buyer/Lessee | Date 80 |

**Brokers' Acknowledgment**                                                                               81

Brokers have informed the Seller/Lessor of the Seller's/Lessor's obligations under 42 U.S.C. 4852(d) and are   82
aware of their responsibility to ensure compliance.                                                        83

| *signature* | 4-8-16 | *Zai Rainey* | 5/27/2016 |
|---|---|---|---|
| Selling Broker | Date | Listing Broker | Date 84 |

Initials: BUYER/LESSEE: **CT**  Date: 8/8/2016          SELLER/LESSOR: **ejw**  Date: 5/26/2016

BUYER/LESSEE: **CJ**  Date: 8/8/2016          SELLER/LESSOR: _____  Date: _____

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

Form 22T
Title Contingency Addendum
Rev. 7/15
Page 1 of 1

**TITLE CONTINGENCY ADDENDUM TO
PURCHASE & SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated __9-6-2016__   1

between __COUNTIERNEY & GLORIA JOHNSON__ ("Buyer")   2
<small>Buyer                    Buyer</small>

and __EDMUND J. WOOD, CH. 7 BANKRUPTCY TRUSTEE FOR MICHAELA. CALO__ ("Seller")   3
<small>Seller                    Seller</small>                          GRUDIS

concerning __5415 24th AVE NW #24 SEATTLE, WA 98107__ (the "Property").   4
<small>Address                    City                    State    Zip</small>

1. **Title Contingency.** This Agreement is subject to Buyer's review of a preliminary commitment for title insurance,   5
   together with any easements, covenants, conditions and restrictions of record. Buyer shall have _____   6
   days (5 days if not filled in) from ☑ the date of Buyer's receipt of the preliminary commitment for title insurance;   7
   or ☐ mutual acceptance (from the date of Buyer's receipt, if neither box checked) to give notice of Buyer's   8
   disapproval of exceptions contained in the preliminary commitment.   9

   Seller shall have __5__ days (5 days if not filled in) after Buyer's notice of disapproval to give Buyer   10
   notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to clear all   11
   disapproved exceptions.   12

   If Seller does not give timely notice that Seller will clear all disapproved exceptions, Buyer may terminate this   13
   Agreement within 3 days after the deadline for Seller's notice. In the event Buyer elects to terminate the   14
   Agreement, the Earnest Money shall be returned to Buyer. If Buyer does not timely terminate the Agreement,   15
   Buyer shall be deemed to have waived all objections to title, which Seller did not agree to clear.   16

2. **Supplemental Title Reports.** If supplemental title reports disclose new exception(s) to the title commitment,   17
   then the above time periods and procedures for notice, correction, and termination for those new exceptions   18
   shall apply to the date of Buyer's receipt of the supplemental title report. The Closing date shall be extended as   19
   necessary to accommodate the foregoing times for notices.   20

3. **Marketable Title.** This Addendum does not relieve Seller of the obligation to provide marketable title at Closing   21
   as provided for in the Agreement.   22

| ⌐DS CT 8/8/2016 | ⌐DS CJ 8/8/2016 | ⌐DS egw 8/15/2016 | |
|---|---|---|---|
| Buyer's Initials    Date | Buyer's Initials    Date | Seller's Initials    Date | Seller's Initials    Date |

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___August 08, 2016___ 1

between ___Colin Tierney___ ___Gloria Johnson___ ("Buyer") 2
     Buyer                                      Buyer

and _EDMUND J. WOOD, CH 7 BANKRUPTCY TRUSTEE for MICHAEL A. CALOGERAS_ ("Seller") 3
     Seller                      Seller             16-12073

concerning _5615_ ___24th Ave NW #24___ ___Seattle___ __WA__ _98107_ (the "Property"). 4
     Address                              City         State  Zip

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS:     5

**Buyer hereby waives inspection contingency**     6

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged.     31

| | | | | |
|---|---|---|---|---|
| CT  8/8/2016 | GJ  8/8/2016 | ejw  8/15/2016 | | |
| Buyer's Initials  Date | Buyer's Initials  Date | Seller's Initials  Date | Seller's Initials | Date |

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-673C-4266-B771-61878A7B534A

Form 17
Seller Disclosure Statement
Rev. 7/15
Page 1 of 6

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

SELLER: **Edmund J. Wood, Ch 7 Bankruptcy Trustee For Michael A. Calogridis 16-12073**  1
    Seller                            Seller  2

To be used in transfers of improved residential real property, including residential dwellings up to four units, new construction,  2
condominiums not subject to a public offering statement, certain timeshares, and manufactured and mobile homes. See RCW  3
Chapter 64.06 for further information.  4

**INSTRUCTIONS TO THE SELLER**  5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property check  6
"NA." If the answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of  7
the question(s) when you provide your explanation(s). For your protection you must date and initial each page of this disclosure  8
statement and each attachment. Delivery of the disclosure statement must occur not later than five (5) business days, unless  9
otherwise agreed, after mutual acceptance of a written purchase and sale agreement between Buyer and Seller.  10

**NOTICE TO THE BUYER**  11
THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT  12
  5815 24th Ave NW #24, _____ , CITY _____ Seattle _____ , 13

STATE **WA** , ZIP **98107** , COUNTY **King** _____ ("THE PROPERTY") OR AS  14
LEGALLY DESCRIBED ON THE ATTACHED EXHIBIT A.  15

SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL DEFECTS TO BUYER BASED  16
ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE  17
STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3) BUSINESS DAYS FROM  18
THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO RESCIND THE AGREEMENT  19
BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. IF THE  20
SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY WAIVE THE RIGHT TO RESCIND  21
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT.  22

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE  23
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF  24
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER.  25

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED  26
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE,  27
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS,  28
BUILDING INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS.  29
THE PROSPECTIVE BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE  30
PROPERTY OR TO PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY  31
ADVICE, INSPECTION, DEFECTS OR WARRANTIES.  32

   33

SELLER ❑ IS/ ❑ IS NOT OCCUPYING THE PROPERTY.

**I. SELLER'S DISCLOSURES:**  34
*If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not  35
otherwise publicly recorded. If necessary, use an attached sheet.  36

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| **1. TITLE** | | | | | 38 |
| A. Do you have legal authority to sell the property? If no, please explain. ..............❑ | | ❑ | ❑ | ❑ | 39 |
| *B. Is title to the property subject to any of the following? | | | | | 40 |
| (1) First right of refusal ...........................................................❑ | | ❑ | ❑ | ❑ | 41 |
| (2) Option ...........................................................................❑ | | ❑ | ❑ | ❑ | 42 |
| (3) Lease or rental agreement ..................................................❑ | | ❑ | ❑ | ❑ | 43 |
| (4) Life estate? ....................................................................❑ | | ❑ | ❑ | ❑ | 44 |
| *C. Are there any encroachments, boundary agreements, or boundary disputes? ..............❑ | | ❑ | ❑ | ❑ | 45 |
| *D. Is there a private road or easement agreement for access to the property? ..............❑ | | ❑ | ❑ | ❑ | 46 |
| *E. Are there any rights-of-way, easements, or access limitations that may affect the Buyer's use of the property? ............................................................................❑ | | ❑ | ❑ | ❑ | 47 48 |
| *F. Are there any written agreements for joint maintenance of an easement or right-of-way? ..............❑ | | ❑ | ❑ | ❑ | 49 |
| *G. Is there any study, survey project, or notice that would adversely affect the property? ..............❑ | | ❑ | ❑ | ❑ | 50 |
| H. Are there any pending or existing assessments against the property? ..........................❑ | | ❑ | ❑ | ❑ | 51 |

_____  _____        _____  _____
SELLER'S INITIALS    Date        SELLER'S INITIALS    Date

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-673C-4286-B771-61878A7B634A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

YES NO DON'T KNOW N/A

*I. Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling? ......... ☐ ☐ ☐ ☐

*J. Is there a boundary survey for the property? ......... ☐ ☐ ☐ ☐

*K. Are there any covenants, conditions, or restrictions recorded against the property? ......... ☐ ☐ ☐ ☐

PLEASE NOTE: Covenants, conditions, and restrictions which purport to forbid or restrict the conveyance, encumbrance, occupancy, or lease of real property to individuals based on race, creed, color, sex, national origin, familial status, or disability are void, unenforceable, and illegal. RCW 49.60.224.

**2. WATER**

A. Household Water

(1) The source of water for the property is: ☐ Private or publicly owned water system ☐ Private well serving only the subject property *☐ Other water system
*If shared, are there any written agreements? ......... ☐ ☐ ☐ ☐

*(2) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? ......... ☐ ☐ ☐ ☐

*(3) Are there any problems or repairs needed? ......... ☐ ☐ ☐ ☐

(4) During your ownership, has the source provided an adequate year-round supply of potable water? ..☐ ☐ ☐ ☐
If no, please explain: _____

*(5) Are there any water treatment systems for the property? ......... ☐ ☐ ☐ ☐
If yes, are they: ☐ Leased ☐ Owned

*(6) Are there any water rights for the property associated with its domestic water supply, such as a water right permit, certificate, or claim? ......... ☐ ☐ ☐ ☐

(a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? ..☐ ☐ ☐ ☐
*(b) If yes, has all or any portion of the water right not been used for five or more successive years? ☐ ☐ ☐ ☐

*(7) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? .......☐ ☐ ☐ ☐

B. Irrigation Water

(1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? ......... ☐ ☐ ☐ ☐
*(a) If yes, has all or any portion of the water right not been used for five or more successive years? ......... ☐ ☐ ☐ ☐
*(b) If so, is the certificate available? (If yes, please attach a copy.) ......... ☐ ☐ ☐ ☐
*(c) If so, has the water right permit, certificate, or claim been assigned, transferred, or changed? ...☐ ☐ ☐ ☐

*(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? .....☐ ☐ ☐ ☐
If so, please identify the entity that supplies water to the property:

C. Outdoor Sprinkler System

(1) Is there an outdoor sprinkler system for the property? ......... ☐ ☐ ☐ ☐
*(2) If yes, are there any defects in the system? ......... ☐ ☐ ☐ ☐
*(3) If yes, is the sprinkler system connected to irrigation water? ......... ☐ ☐ ☐ ☐

**3. SEWER/ON-SITE SEWAGE SYSTEM**

A. The property is served by:
☑ Public sewer system ☐ On-site sewage system (including pipes, tanks, drainfields, and all other component parts)
☐ Other disposal system
Please describe:_____

_____  ____  _____  ____
SELLER'S INITIALS    Date    SELLER'S INITIALS    Date

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-573C-4286-B771-61878A7B634A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| B. If public sewer system service is available to the property, is the house connected to the sewer main? | ☐ | ☐ | ☐ | ☐ | 98 99 100 |
| If no, please explain: | | | | | 101 |
| *C. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service? | ☐ | ☐ | ☐ | ☐ | 102 103 |
| D. If the property is connected to an on-site sewage system: | | | | | 104 |
| *(1) Was a permit issued for its construction, and was it approved by the local health department or district following its construction? | ☐ | ☑ | ☐ | ☐ | 105 106 |
| (2) When was it last pumped? | | | | | 107 |
| *(3) Are there any defects in the operation of the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 108 |
| (4) When was it last inspected? | | | ☐ | ☐ | 109 |
| By whom: | | | | | 110 |
| (5) For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ☐ | ☐ | 111 |
| E. Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 112 113 |
| If no, please explain: | | | | | 114 |
| *F. Have there been any changes or repairs to the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 115 |
| G. Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? | ☐ | ☐ | ☐ | ☐ | 116 117 |
| If no, please explain: | | | | | 118 |
| *H. Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? | ☐ | ☐ | ☐ | ☐ | 119 120 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES). — 121 122 123

**4. STRUCTURAL** — 124

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Has the roof leaked within the last 5 years? | ☐ | ☐ | ☐ | ☐ | 125 |
| *B. Has the basement flooded or leaked? | ☐ | ☐ | ☐ | ☐ | 126 |
| *C. Have there been any conversions, additions or remodeling? | ☐ | ☐ | ☐ | ☐ | 127 |
| *(1) If yes, were all building permits obtained? | ☐ | ☐ | ☐ | ☐ | 128 |
| *(2) If yes, were all final inspections obtained? | ☐ | ☐ | ☐ | ☐ | 129 |
| D. Do you know the age of the house? | ☐ | ☐ | ☐ | ☐ | 130 |
| If yes, year of original construction: | | | | | 131 |
| *E. Has there been any settling, slippage, or sliding of the property or its improvements? | ☐ | ☐ | ☐ | ☐ | 132 |
| *F. Are there any defects with the following: (If yes, please check applicable items and explain) | ☐ | ☐ | ☐ | ☐ | 133 |

| | | | |
|---|---|---|---|
| ☐ Foundations | ☐ Decks | ☐ Exterior Walls | 134 |
| ☐ Chimneys | ☐ Interior Walls | ☐ Fire Alarms | 135 |
| ☐ Doors | ☐ Windows | ☐ Patio | 136 |
| ☐ Ceilings | ☐ Slab Floors | ☐ Driveways | 137 |
| ☐ Pools | ☐ Hot Tub | ☐ Sauna | 138 |
| ☐ Sidewalks | ☐ Outbuildings | ☐ Fireplaces | 139 |
| ☐ Garage Floors | ☐ Walkways | ☐ Siding | 140 |
| ☐ Wood Stoves | ☐ Elevators | ☐ Incline Elevators | 141 |
| ☐ Stairway Chair Lifts | ☐ Wheelchair Lifts | ☐ Other _____ | |

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Was a structural pest or "whole house" inspection done? | ☐ | ☐ | ☐ | ☐ | 142 |
| If yes, when and by whom was the inspection completed? | | | | | 143 144 |
| H. During your ownership, has the property had any wood destroying organism or pest infestation? | ☐ | ☐ | ☐ | ☐ | 145 |
| I. Is the attic insulated? | ☐ | ☐ | ☐ | ☐ | 146 |
| J. Is the basement insulated? | ☐ | ☐ | ☐ | ☐ | 147 |

_____ _____    _____ _____
SELLER'S INITIALS    Date         SELLER'S INITIALS    Date

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-673C-4266-B771-61878A7B634A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|:---:|:---:|:---:|:---:|---|
| **5.** | **SYSTEMS AND FIXTURES** | | | | | 148 |
| | | | | | | 149 |
| *A. | If any of the following systems or fixtures are included with the transfer, are there any defects? | | | | | 150 |
| | If yes, please explain: _____ | | | | | 151 |
| | Electrical system, including wiring, switches, outlets, and service ................................ ☐ | | ☐ | ☐ | ☐ | 152 |
| | Plumbing system, including pipes, faucets, fixtures, and toilets.................................☐ | | ☐ | ☐ | ☐ | 153 |
| | Hot water tank ...............................................................................................☐ | | ☐ | ☐ | ☐ | 154 |
| | Garbage disposal...........................................................................................☐ | | ☐ | ☐ | ☐ | 155 |
| | Appliances....................................................................................................☐ | | ☐ | ☐ | ☐ | 156 |
| | Sump pump...................................................................................................☐ | | ☐ | ☐ | ☐ | 157 |
| | Heating and cooling systems ..........................................................................☐ | | ☐ | ☐ | ☐ | 158 |
| | Security system: ☐ Owned  ☐ Leased...............................................................☐ | | ☐ | ☐ | ☐ | 159 |
| | Other_____☐ | | ☐ | ☐ | ☐ | 160 |
| *B. | If any of the following fixtures or property is included with the transfer, are they leased? | | | | | 161 |
| | (If yes, please attach copy of lease.) | | | | | 162 |
| | Security System: _____☐ | | ☐ | ☐ | ☐ | 163 |
| | Tanks (type): _____☐ | | ☐ | ☐ | ☐ | 164 |
| | Satellite dish: _____☐ | | ☐ | ☐ | ☐ | 165 |
| | Other:_____☐ | | ☐ | ☐ | ☐ | 166 |
| | | | | | | 167 |
| *C. | Are any of the following kinds of wood burning appliances present at the property? | | | | | |
| | (1) Woodstove? ................................................................................................☐ | | ☐ | ☐ | ☐ | 168 |
| | (2) Fireplace insert? .........................................................................................☐ | | ☐ | ☐ | ☐ | 169 |
| | (3) Pellet stove? ..............................................................................................☐ | | ☐ | ☐ | ☐ | 170 |
| | (4) Fireplace? ..................................................................................................☐ | | ☐ | ☐ | ☐ | 171 |
| | If yes, are all of the (1) woodstoves or (2) fireplace inserts certified by the U.S. Environmental | | | | | 172 |
| | Protection Agency as clean burning appliances to improve air quality and public health? .......☐ | | ☐ | ☐ | ☐ | 173 |
| D. | Is the property located within a city, county, or district or within a department of natural | | | | | 174 |
| | resources fire protection zone that provides fire protection services?..................................☐ | | ☐ | ☐ | ☐ | 175 |
| E. | Is the property equipped with carbon monoxide alarms? (Note: Pursuant to RCW 19.27.530, Seller | | | | | 176 |
| | must equip the residence with carbon monoxide alarms as required by the state building code.)...........☐ | | ☐ | ☐ | ☐ | 177 |
| F. | Is the property equipped with smoke alarms? ................................................................☐ | | ☐ | ☐ | ☐ | 178 |
| | | | | | | 179 |
| **6.** | **HOMEOWNERS' ASSOCIATION/COMMON INTERESTS** | | | | | |
| A. | Is there a Homeowners' Association? ...........................................................................☐ | | ☐ | ☐ | ☐ | 180 |
| | Name of Association and contact information for an officer, director, employee, or other authorized | | | | | 181 |
| | agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, | | | | | 182 |
| | and other information that is not publicly available: _____ | | | | | 183 |
| B. | Are there regular periodic assessments? .....................................................................☐ | | ☐ | ☐ | ☐ | 184 |
| | $_____ per ☐ month ☐ year | | | | | 185 |
| | ☐ Other: _____ | | | | | 186 |
| *C. | Are there any pending special assessments? ................................................................☐ | | ☐ | ☐ | ☐ | 187 |
| *D. | Are there any shared "common areas" or any joint maintenance agreements (facilities | | | | | 188 |
| | such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas | | | | | 189 |
| | co-owned in undivided interest with others)? .................................................................☐ | | ☐ | ☐ | ☐ | 190 |
| **7.** | **ENVIRONMENTAL** | | | | | 191 |
| *A. | Have there been any flooding, standing water, or drainage problems on the property | | | | | 192 |
| | that affect the property or access to the property? .........................................................☐ | | ☐ | ☐ | ☐ | 193 |
| *B. | Does any part of the property contain fill dirt, waste, or other fill material?............................☐ | | ☐ | ☐ | ☐ | 194 |
| *C. | Is there any material damage to the property from fire, wind, floods, beach movements, | | | | | 195 |
| | earthquake, expansive soils, or landslides? ..................................................................☐ | | ☐ | ☐ | ☐ | 196 |
| D. | Are there any shorelines, wetlands, floodplains, or critical areas on the property? .................☐ | | ☐ | ☐ | ☐ | 197 |
| *E. | Are there any substances, materials, or products in or on the property that may be environmental | | | | | 198 |
| | concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical | | | | | 199 |
| | storage tanks, or contaminated soil or water? ...............................................................☐ | | ☐ | ☐ | ☐ | 200 |
| *F. | Has the property been used for commercial or industrial purposes?...................................☐ | | ☐ | ☐ | ☐ | 201 |

_____   _____
SELLER'S INITIALS          Date        SELLER'S INITIALS          Date

DocuSign Envelope ID: BA3236A8-70B2-46CE-8004-67C374ABCFE7

DocuSign Envelope ID: 0F421CB5-673C-4286-B771-61878A7B634A

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A |
|---|---|---|---|---|

*G. Is there any soil or groundwater contamination? ☐ ☐ ☐ ☐ — 202 203 204

*H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? ☐ ☐ ☐ ☐ — 205 206

*I. Has the property been used as a legal or illegal dumping site? ☐ ☐ ☑ ☐ — 207

*J. Has the property been used as an illegal drug manufacturing site? ☐ ☐ ☐ ☐ — 208

*K. Are there any radio towers in the area that cause interference with cellular telephone reception? ☐ ☐ ☐ ☐ — 209
— 210

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978).

A. Presence of lead-based paint and/or lead-based paint hazards (check one below): — 211

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____ — 212 213

☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. — 214

B. Records and reports available to the Seller (check one below): — 215

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below). — 216 217

_____ — 218

☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing. — 219
— 220

**9. MANUFACTURED AND MOBILE HOMES** — 221

If the property includes a manufactured or mobile home,

*A. Did you make any alterations to the home? ☐ ☐ ☐ ☐ — 222

If yes, please describe the alterations: _____ — 223

*B. Did any previous owner make any alterations to the home? ☐ ☐ ☐ ☐ — 224

*C. If alterations were made, were permits or variances for these alterations obtained? ☐ ☐ ☐ ☐ — 225
— 226

**10. FULL DISCLOSURE BY SELLERS** — 227

A. Other conditions or defects:

*Are there any other existing material defects affecting the property that a prospective buyer should know about? ☐ ☐ ☐ ☐ — 228 229
— 230

B. Verification

The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property. — 231 232 233 234
— 235

_____     _____     _____     _____
Seller                  Date            Seller                  Date — 236

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of the question(s). — 237 238

— 239
— 240
— 241
— 242
— 243
— 244
— 245
— 246
— 247
— 248
— 249
— 250
— 251

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. NOTICES TO THE BUYER

**1. SEX OFFENDER REGISTRATION**

INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS.

**2. PROXIMITY TO FARMING**

THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN CLOSE PROXIMITY TO A FARM. THE OPERATION OF A FARM INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES, WHICH ARE PROTECTED UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT.

## III. BUYER'S ACKNOWLEDGEMENT

**1. BUYER HEREBY ACKNOWLEDGES THAT:**

A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation.

B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real estate licensee or other party.

C. Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information provided by Seller, except to the extent that real estate licensees know of such inaccurate information.

D. This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.

E. Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).

F. If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet *Protect Your Family From Lead in Your Home.*

DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER AND SELLER OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. YOU MAY WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.

BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR OTHER PARTY.

| Buyer | Date | Buyer | Date |
|---|---|---|---|

**2. BUYER'S WAIVER OF RIGHT TO REVOKE OFFER**

Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and waives Buyer's right to revoke Buyer's offer based on this disclosure.

| Buyer | Date | Buyer | Date |
|---|---|---|---|

**3. BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT**

Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right. However, if the answer to any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive the receipt of the "Environmental" section of the Seller Disclosure Statement.

| DocuSigned by: Colin Tierney | 8/8/2016 | DocuSigned by: Gloria Johnson | 8/8/2016 |
|---|---|---|---|
| Buyer | Date | Buyer | Date |

Seller is a Bankruptcy Trustee and Exempt from providing these Disclosures

DocuSigned by: Edmund J. Wood 8/15/2016

| EJW 5/26/2016 | | | |
|---|---|---|---|
| SELLER'S INITIALS | Date | SELLER'S INITIALS | Date |